## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

MAYSA ASHHAB JONES,    )
43-33 46th Street, #B4    )
Sunnyside, NY 11104    )
    )
    )
Plaintiff,    )
    )
v.    )    Civil Action No. 1:19-cv-2729
    )
MICHAEL RICHARD POMPEO,  )    COMPLAINT
Secretary of the Department of State )
2201 C St NW    )
Washington, DC 20520    )
    )    <u>JURY TRIAL DEMAND</u>
Defendant.    )
_____)

## <u>COMPLAINT</u>

COMES NOW Plaintiff Maysa Ashhab Jones (referred below as "Plaintiff" or "Ms. Ashhab") complaining of discrimination in employment by joint employer the State Department and in support of such Complaint states and alleges the following facts.  She also references herein a State Department Record of Investigation (ROI) of her complaint to assist in answering her allegations.  She does not attach the ROI.

## <u>NATURE OF ACTION</u>

1.   This is a civil action under Title VII of the Civil Rights Act of 1964.  Plaintiff, Maysa Ashhab-Jones ("Plaintiff" or "Ashhab"), who was adversely affected by such practices.  Plaintiff alleges that the U.S. Department of State ("State Department") unlawfully caused a discriminatory hostile work environment and caused the termination of her employment in conjunction with her contractor employer based on her female gender, Pales-

tinian national origin, and Muslim religion and in retaliation for complaining about discrimination.

## JURISDICTION.

2.      This Court has jurisdiction and this action is authorized and instituted under Section 706(f) (1) and (3) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e-16 and 2000e-5 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  This Court also has jurisdiction based on 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

3.      Plaintiff Maysa Ashhab worked on a State Department contract in Baghdad, Iraq at the U.S. Embassy.  The contract was first was granted by the State Department to All Native Corporation ("All Native") and then to Cherokee Nation Strategic Programs, LLC, an Oklahoma limited liability company ("Cherokee Nation").  Ms. Ashhab remained employed working for the State Department during the periods of these contracts.

4.      The unlawful employment practices alleged in this complaint occurred in Baghdad Iraq where plaintiff worked with State Department officials and in Washington D.C. where officials supervised the State Department officials who worked with Ms. Ashhab.

5.      A U.S. District Court has extra-territorial jurisdiction under Title VII. 42 U.S.C. § 2000e-1 (2006).

## PARTIES.

6.      The Defendant is the Secretary of the Department of State.

7.      The Plaintiff is Maysa Ashhab, a former employee in the State Department position of IT Support Specialist, IRM, Operations Coordination Center, U.S. Embassy Baghdad.

8.      The State Department paid Maysa Ashhab for her work through a State Department con-

tractor, Cherokee Nation Strategic Programs.  Ms. Ashhab did State Department work in further-

ance of State Department missions, and was supervised by State Department officials.  She sues

the State Department as a joint employer of her.

9.      The Plaintiff filed a lawsuit against her joint employer, Cherokee Nation Strategic Pro-

grams, in this Court and later may move to join the Complaints to serve judicial efficiencies.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES.

10.      The Plaintiff exhausted her administrative remedies regarding the State Department by

filing an Equal Employment Opportunity (EEO) complaint with the State Department, which

complaint was accepted by the State Department and investigated.

11. Ms. Ashhab then filed her complaint, consistent with State Department notice and instruc-

tions, with the U.S. Equal Employment Opportunity Commission (EEOC).

12.      An EEOC Administrative Judge (AJ) issued a decision dismissing Ms. Ashhab's admin-

istrative complaint, finding that the State Department did not meet joint employer criteria but

also that Ms. Ashhab had filed a complaint in court against Cherokee Nation Strategic Programs

and thus removed jurisdiction from EEOC.

13.      Received by Ms. Ashhab June 19, 2019, the State Department adopted the AJ Decision

and issued its Final Agency Decision (FAD), giving notice of rights to file in U.S. District Court

within 90-days.

14.      The Administrative Judge Decision finding the State Department was not a joint employ-

er was based on disputed and incorrect material facts, statements, and opinions and misappre-

hended the law.  Ms. Ashhab elected to file in this Court rather than appeal the decision to the

EEOC.

15.     This Complaint in U.S. District Court is timely filed.

## VENUE.

16.     Defendant, the State Department is headquartered in Washington. D.C., and venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b).  When in Iraq Ms. Ashhab was directed in her work by U.S. Embassy State Department officials but also had regular contact with State Department officials in D.C. Headquarters as part of her duties and responsibilities.

17.     Ms. Ashhab worked in the IRM (Information Resource Management) State Department section at the U.S. Embassy in Baghdad.  IRM reports directly or through Post Management to the State Department Under Secretary for Management and State Department Bureau of Administration, both located in Washington, D.C.

18.  Venue is proper in his Court.

## BACKGROUND AND JOINT EMPLOYER.

19.  The State Department contracted with Cherokee Nation Strategic Programs, and before that All Native, for certain services and under these contracts Ms. Ashhab was assigned to perform responsibilities for the State Department.

20.  Ms. Ashhab's position IRM Operations Coordinator is embedded within State Department IRM section and her work was an integral part of the business of the State Department.

21.  Organizational charts show Ms. Ashhab embedded within Information Resource Management (IRM) under a Department of State supervisor and working side by side, and indistinguishable by position title from the positions of State Department federal employees.

22.  The Cherokee Nation Strategic Programs project manager, Mechelle Berry Prewitt also was supervised by a State Department official and integrated into the State Department mission.

23.  As part of her duties, Ms. Ashhab also regularly worked with State Department officials both within the U.S. Embassy in Baghdad and in the Washington D.C. headquarters.

24.    Integration with the State Department mission in Iraq was seen outside duty hours as well.  For example, Ms. Ashhab participated in the State Department outreach to Iraqis for both an Iraqi national holiday and on Thanksgiving.

25.    Ms. Ashhab was also the Master of Ceremonies at the Embassy Baghdad's Independence Day, an event attended by 500 persons, and served as voice of the Embassy to Iraqi and Foreign Mission guests.  ROI 323.  She represented the U.S. mission for a special Thanksgiving Day cooking show on Al-Sumaria (Iraqi) Television.  ROI 327.

26.  The State Department provided equipment used in her job, monitored her day to day work and evaluated her work, and all performance of work was subject to technical instructions, whether oral or written, issued by the State Department Contracting Officer's Representative. ROI Addendum 72.

27.  Ms. Ashhab was not a person performing ad hoc jobs for the State Department.  She was a full time employee with full time pay.

28.    Ms. Ashhab earned overtime.  The overtime she received must be approved by the State Department.

29.     The State Department furnished all the equipment Ms. Ashhab used, including the Blackberry and cellphone for her.

30.  Ms.  Ashhab worked in, and was housed in, State Department premises. She had "Diplomatic Postal Office" privileges and State Department business cards. She had a State Department email account.

31.     Ms. Ashhab has been contracted to work with the State Department for a number of years and was able to continue her work for the State Department when a new company, Cherokee Nation took over upon expiration of the State Department's contract with All Native Inc. /Ho-Chunk Inc. (ANI/HCI) in October 2016.

32.   The decision to pay Ms. Ashhab a pay increase was based on performance ratings.  ROI 572, item 9.  The State Department gave the performance ratings and thus indirectly controlled pay increases.

33.   The State Department had discretion to remove Ms. Ashhab from the contract.  Pursuant to provisions in the contract with All Native and later with Cherokee Nation, the State Department "may, by written notice to the Contractor, direct the removal and/or replacement of Contractor personnel assigned to this contract.  A Contractor employee may be removed from duty for cause (misconduct, DS determination of unsuitability for sensitive duties and/or loss of personnel security clearance, or unsatisfactory performance) or for the convenience of the Government."  ROI 507 (titled H-010 REMOVAL FROM DUTY).

34.   The State Department determined and approved her work hours, overtime, and all performance of work was subject to technical instructions, whether oral or written, issued by the Contracting Officer's Representative, State Department representative, ROI Addendum, 072, Exh. G. The State Department did change the workweek in the contract.  ROI 518.  The State Department had the right to exercise sufficient control over Ms. Ashhab to have her removed from the contract and did have her removed from the contract.

35.   State Department official and Contracting  Officer Representative (COR) Douglas Towns confirmed that the State Department can terminate any contractor position at any time and that

the contractor has no say whether a contractor employee's position is terminated nor is either the employee or contractor even entitled to advance notice. ROI 72.

36.  The State Department directly and indirectly controlled the means and manner of Ms. Ashhab's performance, including when leave was granted.  Cherokee Nation could not approve leave unless the State Department first approved leave.  ROI 510, item 7 (Mechelle Berry Prewitt only would approve leave "if the leave request was approved by the employee's State Department supervisor.")

37.  Vacations (rest and relaxation) were approved by the State Department.

38.  The State Department controlled and monitored performance and assignments of Ms. Ashhab.

39.  Ms. Ashhab's work week also was determined by the State Department.  ROI 246.

40.  The State Department was the joint employer of Ms. Ashhab and exercised its control over her to cause, in conjunction with Cherokee Nation Strategic Programs, a hostile work environment and to separate her from employment.

## FACTS RELEVANT TO THE DISCRIMINATION.

41.      Ms. Maysa Ashhab belongs to classes protected under Title VII being female, an Arab Palestinian, Muslim, and having engaged in protected activity of complaining about discrimination.


Ms. Ashhab was qualified for her job in her performance and conduct.

42.  Ms. Ashhab was hired to work on a federal Contract with the State Department in December 2011 and found qualified to service the contract, working for State Department officials.  She transitioned to a second position, under the same contract, in August 2012, and again was found

qualified for the position.  She remained in that position until loss of employment the summer of 2017.

43.    Ms. Ashhab's 2012 position description lists administrative and communication functions.  Ms. Ashhab also speaks fluent Arabic and is an American citizen.

44.  Communications are a substantial function of the information management section and Arabic language skill was a requirement to correspond with the Iraqi Ministry of Communications' officials.  In these regards, Ms. Ashhab's position description duties included responsibilities as liaison with other organizational components and "external constituencies in the resolution of a variety of day-to-day and long-term matters," and other duties as assigned.  She was also required to hold a security clearance. ROI 245-246.

45.  Ms.  Ashhab's personal qualifications included Arabic language and holding security clearances.  She used these skills in the performance of her job.  She negotiated, for example, with Iraqi officials on Radio Frequencies' availability and billing, among other communications, under State Department supervision.

46.  She wrote position descriptions and coordinated processing of positions of U.S. personnel, Locally Employed Staff and Third Country National for their hires in her State Department section. Knowledge of the culture of the region was important in conducting business for the section.

47.  She attended meetings between State Department supervisors and Iraqi officials, where she translated and served as the point of contact for some Iraqi officials, at the direction of her State Department supervisors

48.  Ms. Ashhab was held in high regard by her State Department supervisors and greater responsibilities were sought for her.  In 2013, Ms. Ashhab's State Department supervisor Howard

Keegan proposed a more expansive position description to encompass what she was doing in the job including qualifications such as knowledge of Administrative and Operational Duties in State Department organizations and specifically U.S. Mission Iraq,  knowledge of the process of embassy level governmental operations, fluent Arabic language skills, and  experience in the systematic development of staff to ensure the LES, TCN, and USDH fully understand the processes at the embassy and country-wide level and to encourage growth and improvement through formal and OJT opportunities.

49.  Ms. Ashhab's qualifications and duties also are reflected in performance appraisals.  For example, she was rated under "section 8 Lead" for "directing others and direction of work flow in assigned areas effectively to meet production/area goals."

50.  In a performance appraisal, it was noted that: "Maysa is the first volunteer to assist any section with any issue.  She supports the Public Affairs section, the Executive Office, and the Mission in community events.  She donates her time to improve mission morale and operations."  It also is noted that Ms. Ashhab worked closely with Department of State staff and is assigned, and accepts, duties and responsibilities from Department of State.

51.  Her qualifications and integration in the mission is also seen in 2014.  In June 2014, ISIS took Mosul and did mass executions.  ISIS had control of a substantial portion of Iraq.  The U.S. Embassy evacuated a significant number of personnel, and most contractors who were on the ground.  Embassy sections made decisions on essential employees to stay behind. News reports of these events can be found on the internet.  E.g., https://www.foxnews.com/politics/us-evacuating-baghdad-embassy-staff-as-islamic-militants-ramp-up-attacks.

Ms. Ashhab was deemed essential to the section and embassy as the only Cleared American who speaks Arabic and had contacts with Iraqi officials in the Ministry of Communication, essential to the embassy's radio frequencies operations.

52.  On or around January and March, 2016, Ms. Ashhab's supervisor praised her performance and requested an upgrade in her government clearance, in order to give her more managerial tasks.

53.  Ms. Ashhab was qualified for her position.

Ms. Ashhab is Palestinian from a Muslim family and was treated differently than others.

54.  Ms. Maysa Ashhab was born Muslim.

55.  Her national origin is Palestinian.  ROI 141.  She is Arab.

56.  Ms. Ashhab and another male, Rashid (last name omitted), were the only U.S hired Palestinians on the All Native/Cherokee Nation Strategic Programs (SME) contract.  The Embassy also uses local hired Iraqis for certain work.  All employees on the contract, except Rashid, came from a different national origin than Palestine.

57.  The other Palestinian on the All Native contract, Rashid, was terminated by Ms. Mechelle Berry Prewitt the end of May 2016.  Rashid was terminated after Mechelle's husband and Rashid supervisor, State Department official Timothy Prewitt asked that Rashid be removed from the contract.  State Department Contracting Officer (COR) Mr. Towns asked that he be removed from the contract.

58.  State Department COR Mr. Doug Towns issued the loss of confidence letter to remove Ms. Ashhab from the contract.

59.  Rashid also alleged discrimination based on his national origin and accused Ms. Mechelle Berry Prewitt of anti-Muslim and anti-Arab statements and jokes.

Ms. Ashhab complained of a hostile work environment.

60.  Ms. Ashhab complained of a hostile work environment and other discrimination by State Department employees.

61.  Mr. Jeffrey Myers, a State Department official and Information Management Officer (IMO) supervised Ms. Ashhab, daily, from September 2015 to September 2016.

62.  On July 6 and July 7, 2016, the Eid holiday was celebrated and the U.S. Embassy, Baghdad, announced it was recognizing the Eid holiday and closing operations.

63.  Ms. Ashhab was authorized by her State Department supervisor Mr. Jeffrey Myers to be out of the office during the holiday but on call just as she was authorized during previous Embassy non-US holidays.

64.  The same as she had been approved and done in 2012, 2013, 2014, and 2015, Ms. Ashhab recorded her time for the two days as "regular," which had been the only charge code available and known to her and other U.S. SME contractors. (The code "holiday" is used only for U.S. Federal holidays.)

65.  July 6 and 7, 2016, Ms. Ashhab also prepared for the U.S. Independence Day reception to be held July 12, 2016 and as requested by the Embassy Front Office.

66.  July 13, 2016, Ms. Ashhab was told by Ms. Mechelle Berry Prewitt there were issues with Ms. Ashhab's time sheets during the Eid holiday.  Ms. Ashhab explained she was authorized to be out of the office and on call but changed her time sheets when Ms. Berry Prewitt said it would be viewed as time sheet fraud and will lead to termination.

67.  On July 21, 2016, Cherokee Nation project manager Ms. Berry Prewitt gave Ms. Ashhab with a written warning (dated July 13, 2016) which covered the same time sheet issue for which

Ms. Ashhab was given a verbal warning, even though she had changed her time sheets as directed.  Ms. Ashhab complained she was being disciplined for following standard procedures

68.  Ms. Berry stated that she did not discipline other contractor employees because there "was no complaint received from these employee's State Department USG Supervisor regarding their work schedule on July 6 and 7, 2016."  ROI Addendum 64.

69.  On or around July 21, 2016, Ms. Ashhab emailed that she was being singled out in a disciplinary action and appealed the escalation to a written warning based on the same alleged conduct for which she had received a verbal warning on July 13, 2016.

70.  On July 24, 2016, Ms. Ashhab had a meeting with the State Department COR, Douglas Towns.  Mr. Towns said Ms. Ashhab was the only American contractor on the SME contract that was brought to his attention for the Eid holiday timekeeping issue.  He said a lot of people were confused on the holiday normal procedures.

71.  Mr. Towns said there was an across the board misunderstanding of the contract and that he was working with the program managers of four different contracts to clean things up.

72.  On July 31, 2016, Ms. Ashhab, based on guidance received from the State Department Office of Equal Employment Opportunity (EEO), filed an administrative informal EEO complaint with a State Department EEO counselor concerning the discrimination against her.  ROI 142.

73.  This complaint was later amended several times as Ms. Ashhab was subject to retaliation and the work environment became more hostile due to her supervisors' actions.

74.  On August 29, 2016, Ms. Ashhab filed a Formal Complaint of Discrimination with the Office of Civil Rights.  She complained of gender discrimination and discrimination based on national origin and religion.  She also alleged retaliation for complaining of discrimination and amended her formal complaint more than once to complain of continued acts of retaliation.

75.  In her complaint with the State Department, Ms. Ashhab alleged discriminating Management officials included Jeffrey Myers, her supervisor in IRM, and the Information Management Officer and at the time Acting Management Minister Counselor.

76.  Ms. Ashhab had been polite, friendly, and platonic with Mr. Myers such as having coffee and conversation, which were culturally acceptable and common social interactions in the U.S. Embassy, Baghdad, where people were confined inside the embassy walls in a war zone.

77.  Mr. Myers repeatedly asked Ms. Ashhab for an intimate relationship.  He also pressured her to set him up with her female friends.  Ms. Ashhab rejected his attempts but also refused to set him with her friends. "NO," the things you ask of me," "stop it."  He asked her female friends for dates and her friends were cautious near him because he was a senior official but told Ms.  Ashhab they did not want to date him. ROI 168-170.

78.  In May 2016, when Ms. Ashhab was on leave with her boyfriend. Mr. Myers initiated a WhatsApp message exchange with her.  He told her that he told his parents about his "Palestinian worrier," and how much he enjoyed working with her.  He told her she needed a mature man like him.

79.  Ms. Ashhab alleged in connection with her administrative complaint of discrimination that Mr. Myers discriminated against her by reporting her for an attendance issue and recommending her for a reprimand/letter of warning.  She also alleged that Mr. Myers created a direct-hire position to replace her position.

80.  In her EEO complaint, Ms. Ashhab complained that Mr. Myers acted to punish her for personal reasons: She was a female, he liked more than a friend and a colleague and he was jealous and felt betrayed when Ms. Ashhab became social friends with a male coworker.  ROI 144 & 150.

81. From around June 20, 2016 until July 13, 2016, Mr. Myers did not speak to Ms. Ashhab and isolated her from her duties.

82. On July 6 or July 13, 2016, or both, Mr. Myers asked an Ashhab colleague Charles D Morgenstern not to reveal that he made the complaint about Ms. Ashhab's attendance during the Eid holiday.

83. On July 21, 2016, Mr. Myers asked to meet Ms. Ashhab for coffee "to clear the air." Mr. Myers said he had not contacted Ms. Mechelle Berry Prewitt about attendance on the Eid holiday, she contacted him, instead. He said he did not know that he wasn't allowed to permit Ms. Ashhab to be out of the office on an Embassy-wide nonfederal holiday.

84. Mr. Myers also said he thought (the male colleague to Ms. Ashhab and a subordinate of Mr. Myers) "Eric was coming onto" Ms. Ashhab and Mr. Myers didn't like it." Ms. Ashhab asked that he not mix emotions with work decisions and that he hurt her professionally with his behavior.

85. During the July 21, 2016 conversation, Mr. Myers said, "you need to get out of here. You've been here for too long." Mr. Myers told Plaintiff that Ms. Mechelle Berry Prewitt wanted to fire her but he protected her.

86. On or around August 8, 2016, during the informal EEO process, Charles D Morgenstern said Mr. Myers "discretely" directed him to report Ms. Ashhab to her contract company.


After she complained of discrimination Ms. Ashhab was subject to increased scrutiny, a series of adverse acts and then terminated from her employment.

87. In August 2016, and after, Ms. Ashhab complained about discrimination against her and a hostile work environment, Mr. Myers asked Plaintiff to drop the EEO complaint and move on.

88.  In August-September 2016, the State Department EEO counselor spoke with State Department officials and contractor program manager Mechelle Berry Prewitt about Ms. Ashhab's complaints of discrimination, without resolution of the complaints.

89.  On September 7, 2016, Plaintiff learned that she was being investigated for a conduct issue in the embassy. She was accused of harassing and threatening the food service staff.  She was speaking Arabic with an Iraqi food service employee because the staff did not have a change for a $50.  She yelled, so the employee in the back kitchen behind a wall could hear her, that she would return at another time for her change as she was rushing.

90.  In September 2016, Ms. Ashhab heard that Mr. Myers called her a "bitch" during his farewell party.

91.  Ms. Ashhab's supervisor in 2017 was Jaime Esquivel, Information Management Officer (IMO).  Mr. Esquivel said he was aware of the discrimination complaints, that "it would have been sometime in August 2016 while I was acting IMO . . .  more recounting the issues/incidents of the EEO complaint she had filed and/or that she was involved in at the time. My understanding was that she was already addressing her concerns.")  Also see ROI 17 (Mr. Jeff Myers), ROI 598 (Contracting officer Denver J. Herren aware in September 2016.

92.  Mr. Douglas Towns, however, claims he first became aware of the EEO complaint in March 2017 when contacted by an EEO counselor in March 2017 and asked to provide his "first" affidavit.  ROI 517 (#14 and #17).

93.  The State Department accepted Ms. Ashhab's EEO complaint against State Department officials and investigated it, and made a Report of Investigation (ROI) and Addendum ROI.

94.  In December 2016, State Department official Jeffrey Myers signed an affidavit for an EEO investigating officer concerning the complaints of discrimination.  ROI 376.

95.  January 2, 2017, Mechelle Prewitt Berry signed an affidavit concerning the complaints of discrimination.  ROI 387.

96.  In February 2017, State Department Official Robert Francis Hommowun signed an affidavit concerning the complaints of discrimination.  ROI  469.  At the time he signed the affidavit, Mr. Hommowun was a Management Officer/General Services Officer and Contracting Officer's Representative (COR) for contracts in Baghdad, Iraq.  ROI 387.

97.  After State Department officials knew that she had complained of discrimination, Ms. Ashhab was scrutinized for performance and conduct and then severed from her employment.

98.  In March and April 2017, State Department officials scrutinized her conduct and performance.

99.  Near January 2, 2017, Ms. Ashhab's supervisor Mr. Esquivel took leave and again in March 2017.  Mr. Douglas Towns was Ms. Ashhab's "Acting Supervisor from December 22, 2016 January 16, 2017" and "Acting Supervisor from March 28 to April 20, 2017."  ROI 515 (Mr. Towns' Affidavit).  During these periods, Ms. Ashhab was treated adversely and different than other employees.

100.  In March 2017, Kanya (last name omitted) Logistics coordinator and Alaa (last name omitted), Media advisor, worked on the same contract under the same program manager as Ms. Ashhab.  Each and other contractor employees attended out of office training on March 28 and 29, 2017.

101.  Ms. Ashhab's time sheet was reviewed and she was questioned by Mr. Towns about her attendance at training even though she, unlike other contractor employees, returned to the office after training.

102.  Ms. Ashhab's computer was accessed by State Department officials in what she was told was a review of her performance.  ROI 59-60.

103.  During a second review (after Mr. Towns review) of her time at work, Cherokee Nation Strategic Programs directed that Ms. Ashhab provide a log of her work days.

104.  On August 2, 2016, and in or about March or April, 2017, Ms. Ashhab was informed that her contract position will end the summer of 2017.  ROI 37-38 (April 2017 email). Her position description was being rewritten.  She was told the elimination of her position was requested "to save the section money" and the position would be filled by a State Department Eligible Family Member.  The State Department continued to advertise and fill positions for which Ms. Ashhab was qualified. State Department officials Douglas Towns, Robert Hommowun and Timothy Prewitt, and Cherokee Nation Strategic Programs' program manager Ms. Berry-Prewitt collaborated to change Plaintiff's position qualifications to add PMP and Microsoft management skills; efforts were directed and led by Mr. Towns, ROI 260. Position was advertised June 1, 2017; same duties different qualifications, ROI 250.

105.  On or around April 2017, Ms. Ashhab heard the State Department reopened an investigation into the food service incident ($50 change) of September 2016.

106.  Mr. Towns monitored Ms. Ashhab's attendance on his calendar and did not similarly monitor other employees.

107.  On or near April 11-12, 2017, Cherokee Nation Strategic Programs gave Ms. Ashhab a verbal warning for not saving her daily hours on a time sheet.  Other employees received email reminders to save their daily hours to their time sheets without warnings or penalties.

108.  Ms. Ashhab was doing her job and performing well under supervisor Jaime Esquivel. When her supervisor was absent on leave action was taken by other State Department officials to remove Ms. Ashhab.  ROI Addendum 0076 (Jaime Esquivel Affi.).

109.  State Department officials, other than her immediate supervisor Mr. Jaime Esquivel, complained about Ms. Ashhab's performance and time sheets.  ROI Addendum 76 (Jaime Esquivel).

110.  On or around April 20, 2017, James "Denver" Herren and Ms. Naomi Lyew met with Mr. Esquivel in his office upon his return from leave and asked his consent to remove Ms. Ashhab based on poor performance.  On information and belief, Mr. Esquivel disagreed, and said that he did not have performance issues with Ms. Ashhab.  ROI Addendum 76 (Jaime Esquivel Affi.),

111.   On or about May 9, 2017, the State Department issued Ms. Ashhab's contract company a Loss of Confidence statement regarding her ability to perform and follow policies and requested her immediate removal from the contract.

112.  A State Department official told Cherokee Nation Strategic Programs, moreover, that they would "not oppose" removal of Ms. Ashhab from her employment.  ROI 319-320.

113.  The differential and adverse treatment of Ms. Ashhab did not stop after the issuance of the loss of confidence letter.

114.  On June 25, 2017, during the 2017 Eid holiday, contractor employees worked 45 minutes to a few hours or were out of the office all day.  Ms. Ashhab was scheduled to work full time for nine hours each day.

115.  On July 10, 2017, Ms. Ashhab was told she was being removed from the contract and would be terminated from employment.

116.  Ms. Ashhab provided a resignation with a later date of July 18, 2017.  A few hours later, the same day of July 10, 2017, she withdrew her resignation.

117.   On July 11, 2017, her computer access was cut off and she told to leave the U.S. Embassy compound, without any employment.

118.   After receiving and because of the loss of confidence memo issued by State Department officials, Cherokee Nation separated Ms. Ashhab from her employment.  ROI Addendum, pp. 1-12, Exh. A.

119.   The State Department caused the separation of Ms. Ashhab from her employment and pay.

## COUNT ONE

### Discrimination based on National Origin

120.   Plaintiff realleges and reasserts all stated paragraphs, as if fully set forth herein.

121.   The State Department unlawfully caused a discriminatory hostile work environment and caused the termination of Plaintiff's employment because based on her Palestinian national origin.

122.   As a direct result of this discrimination, Plaintiff was damaged.

## COUNT TWO

### Discrimination based on Religion

123.   Plaintiff realleges and reasserts all stated paragraphs, as if fully set forth herein.

124.   Ms. Ashhab is Muslim.

125.   The State Department unlawfully caused a discriminatory hostile work environment and caused the termination of Plaintiff's employment based on her religion.

126.   As a direct result of this discrimination, Plaintiff was damaged.

## COUNT THREE

### Discrimination based on Gender.

127. Plaintiff realleges and reasserts all stated paragraphs, as if fully set forth herein.

128. Plaintiff alleges the State Department unlawfully caused a discriminatory hostile work environment and caused the termination of Plaintiff's employment based on her gender.

129. As a direct result of this discrimination, Plaintiff was damaged.

## COUNT FOUR

### Discrimination based on Retaliation for Activity Protected under Title VII.

130. Plaintiff realleges and reasserts all stated paragraphs, as if fully set forth herein.

131. Plaintiff alleges the State Department unlawfully caused a discriminatory hostile work environment and caused the termination of Plaintiff's employment because of her activity protected under Title VII including complaining about a hostile work environment and discrimination or filing an EEO complaint and pursuing that complaint and that except for the complaints of discrimination she would not have been separated from her employment.

132. As a direct result of this retaliation, Plaintiff was damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court enter judgment against Defendant as follows:

A. Restore Ms. Ashhab retroactively to employment with the State Department or on a contract with the State Department to the highest position and grade for which she meets qualifications or would have attained but-for being terminated from her employment with back pay and the monetary value of all benefits of employment with the State Department or contractor.

B.  Alternatively, award back pay and two years of front pay Ms. Ashhab would have earned except for the discrimination and retaliation and the monetary value of all benefits of employment.

C.  Award the Plaintiff retroactively  and prospectively the monetary equivalent of the tax-free housing that she received at no cost while employed by the Defendant and the post differential and all other pay, emoluments, and benefits of employment she would have attained but-for being terminated from her employment and the other discrimination against her.

D.  Award the Plaintiff $300,000.00 to compensate her for:  (i) Out-of-pocket expenses and such other pecuniary damages caused by her termination and the other discrimination against her; and (ii) Pain and suffering for mental and emotional anguish and such other non-pecuniary damages caused by her termination and the other discrimination against her.

E.  Award the Plaintiff such other remedies and relief as are justified by the evidence and law.

F.  Award reasonable attorneys' fees and costs incurred in complaining of discrimination and retaliation pursuing a remedy from that discrimination and retaliation both administratively with the State Department, with the EEOC, and before this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Date:   September 12, 2019

Respectfully Submitted,


Maysa Ashhab Jones
By Counsel


_____
William S. Aramony
District of Columbia Bar No. 259895
Law Office of William S. Aramony
100 North Pitt Street, Suite 200
Alexandria, VA 22314
Bill.aramony@aol.com
Phone: 703-299-8496
Fax:  703-299-0601 – ATTN: Bill Aramony
Counsel for the Plaintiff